# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# Statesville DIVISION
# DOCKET NO. 5:19-cv-00142-FDW

| | |
|---|---|
| **Cindy Culbertson Strauch,** | ) |
| **Plaintiff,** | ) |
| vs. | ) **ORDER** |
| **Andrew M. Saul,** | ) |
| **Defendant.** | ) |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 14), and Defendant's Motion for Summary Judgment. (Doc. No. 20). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Supplemental Security Income under 42 U.S.C. § 405(g).[1] Plaintiff alleges the Administrative Law Judge ("ALJ") erred in making the RFC determination because (1) he failed to account for Plaintiff's mental limitations, and (2) the RFC determination is not supported by substantial evidence. (Doc. No. 14, pp. 6, 16). After careful review, and for the reasons that follow, the Court finds the ALJ did not commit reversible error. Accordingly, Plaintiff's Motion (Doc. No. 14) is DENIED, Defendant's Motion (Doc. No. 20) is GRANTED, and the Commissioner's decision is AFFIRMED.

## I.  BACKGROUND

Plaintiff filed an application for Title XVI disability benefits on December 31, 2015, alleging disability beginning March 2, 2015. (Doc. No. 12, p. 176). The claim was initially denied on March 28, 2016 and denied again upon reconsideration on July 5, 2016 Id. at pp. 113, 122. A

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

hearing before an ALJ was held on May 23, 2018 in Charlotte, North Carolina. Id. at p. 136. The ALJ returned an unfavorable decision to Plaintiff on September 25, 2018. Id. at p. 29.

The ALJ made his decision after following the five-step evaluation process for disability claims under the Social Security Act ("The Act"). Id. at pp. 32-34; see also 20 C.F.R. § 416.920(a)(4). At the first step, the ALJ determined Plaintiff has not engaged in "substantial gainful activity" since the date of her initial application for benefits in December of 2015. (Doc. No. 12, p. 34). At step two, the ALJ determined which of Plaintiff's impairments are "severe." Id.; 20 C.F.R. §§ 404.1520(c). The ALJ found Plaintiff's severe impairments are: gunshot wound to the left foot; left talonavicular fusion with allograft; lumbar spondylosis; obesity; mild chronic obstructive pulmonary disease; nicotine dependence; hepatitis C; cirrhosis; alcohol use disorder; and depressive disorder. (Doc. No. 12, p. 34). At step three, the ALJ determined that the severe impairments did not meet or medically equate the severity of impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (Doc. No. 12, p. 34). After considering the record and Plaintiff's severe impairments, at step four the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work, "except that she is limited to occasionally climbing ramps and stairs; never climbing ladders, ropes or scaffolds; performance of simple, routine tasks; and avoidance of concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." Id. at p. 37. The ALJ also determined Plaintiff has no past relevant work. Id. at p. 42. Finally, at step five, the ALJ considered Plaintiff's age, education, work experience, RFC, and the testimony of the Vocational Expert ("VE") to determine Plaintiff can adjust to other jobs in the national economy, including mail clerk non-postal, marker, and housekeeper. Id. at p. 43. The ALJ accordingly denied Plaintiff's application. Id. at pp. 43-44. Plaintiff timely requested review by the Appeals Council, which was denied on August 30, 2019. Id. at p. 6.

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits: "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. Id.; Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and quotations omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment

3

to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520(a)(4). Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

The Fourth Circuit has held:

> If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is "the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work]."

Lewis, 858 F.3d at 861-62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (alterations in original).

In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL

4

374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635] (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862.

If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III.  ANALYSIS

At step four, the ALJ found that Plaintiff has the RFC to "perform light work, "except that she is limited to occasionally climbing ramps and stairs; never climbing ladders, ropes or scaffolds; performance of simple, routine tasks; and avoidance of concentrated exposure to fumes, odors,

dusts, gases, and poor ventilation." (Doc. No. 12, p. 34). Plaintiff alleges the ALJ erred in two respects when making this determination: (1) the ALJ failed to properly account for Plaintiff's mental limitations in the RFC, and (2) the RFC determination is not supported by substantial evidence. (Doc. No. 14, p. 6). The Court addresses each argument in turn.

### A. Mental Limitations

Plaintiff's first assignment of error with respect to the RFC is twofold: first, the ALJ failed to account for Plaintiff's limitations in concentration, persistence and pace as required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015); and second, the ALJ failed to account for Plaintiff's other mental limitations in "Paragraph B" of Listings 12.04 and 12.06. (Doc. No. 14, pp. 7, 11). With respect to concentration, persistence, and pace, Plaintiff argues the ALJ "does not specifically discuss in the decision how the RFC accounted for [Plaintiff's] moderate limitations in concentration, persistence, or pace or her ability to stay on task throughout the workday." (Doc. No. 14, p. 8). In response, Defendant argues the ALJ sufficiently explained why Plaintiff's limitations in concentration, persistence, and pace in accordance with Shinaberry v. Saul, 952 F.3d 113 (4th Cir. 2020).

In Mascio, the Fourth Circuit held that a hypothetical tendered to a VE was legally insufficient where the ALJ failed to explain why the plaintiff's moderate mental limitation in concentration, persistence, and pace did not translate into the RFC. 780 F.3d at 638. The court reasoned that an ALJ cannot sufficiently account for a claimant's limitation in concentration, persistence, and pace by simply limiting the hypothetical to simple or unskilled work. Id. at 638 (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). In other words, "Mascio held that the ability to perform simple work is not the same as having the ability to *stay on task* during a workday, which is the limitation that would account for a claimant's impairment

in concentration, persistence or pace." Minor v. Berryhill, No. 9:17-1087-TMC-BM, 2018 WL 1305181, at *5 (D.S.C. Feb. 20, 2018) (emphasis in original). On the other hand, where an ALJ finds that the concentration, persistence, and pace limitation does not affect the claimant's ability to work, then exclusion of the limitation from the hypothetical tendered is appropriate. Mascio, 780 F.3d at 638; see also Winschel, 631 F.3d at 1180 ("But when medical evidence demonstrates that a claimant can engage in simple, routine, tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."). The Mascio court remanded because the ALJ provided no explanation at all regarding whether the claimant's limitation affected her RFC. Mascio, 780 F.3d at 638.

More recently, the Fourth Circuit held that a limitation to "simple, routine, repetitive tasks" sufficiently accounted for a moderate limitation in concentration, persistence, and pace and borderline intellectual disability where the ALJ "issued a comprehensive decision denying [Plaintiff's] claim." Shinaberry v. Saul, 952 F.3d 113, 119 (4th Cir. 2020). The plaintiff argued that a limitation only to simple, routine, repetitive tasks violated Mascio, but the court disagreed. Id. at 121. The court reiterated that Mascio did not enact a per se rule, but instead allowed the ALJ to explain why a restriction greater than simple, routine, repetitive tasks was not warranted. Id. After discussing the plaintiff's mental limitations, which consisted primarily of explaining the rationale for giving great weight to the State Agency psychological experts' and consultative psychologist's opinions, the ALJ stated that the "simple, routine, repetitive tasks" restriction "accounted" for Plaintiff's limitations. Id. at 121-22. "In sum … the ALJ … addressed [Plaintiff's mental limitations] and explained why the psychological evidence and [Plaintiff's] statements support [only] a mental limitation to [simple, routine, repetitive tasks]." Id. at 122. Accordingly, the court affirmed the ALJ's hearing decision. Id. at 124.

Here, unlike in Mascio, the ALJ accounted for Plaintiff's ability to stay on task in his hypothetical posed to the VE, and comprehensively explained why the RFC was limited to "simple, routine tasks" in his written decision. For instance, the ALJ specifically asked the VE whether work would be available to an individual who could only "receive simple, routine tasks" and would also "require three to five unplanned rest periods to leave the work area." (Doc. No. 12, p. 74). In his written decision, the ALJ acknowledged that Plaintiff suffered from "anxiety, depression, and alcohol use disorder" and was limited to performing "simple, repetitive tasks." Id. at pp. 39, 41. He also acknowledged Plaintiff's diagnosis of borderline intellectual functioning but noted the record did not provide any intelligent quotient scores. Id. at p. 40. The ALJ furhter referenced the observations of non-examining State agency psychological consultants and explained:

> [Plaintiff] would have some difficulty maintaining attention and concentration to complete simple tasks and interacting with co-workers, supervisors and the public. In addition, she would have difficulty adapting to changes and stressors in a work setting. Based on the findings of a mental status examination, which showed that the claimant could repeat four digits forward but not five or six and recall three of three objects after five minutes, the undersigned finds that the claimant is limited to the performance of simple, routine tasks. However, the undersigned finds that the further limitations of low stress work setting and limited social contact are inconsistent with the claimant working three years as a certified nursing assistant, as well as, working as a housekeeper in nursing homes. Treatment notes also indicated that she enjoyed interacting with others at Alcoholic Anonymous meetings.

Id. at p. 41. The ALJ also explained his decision to give little weight to the examining psychologist's conclusion that Plaintiff "would miss work or have a difficult time working a full-time job" because the examining psychologists conclusion was "based on a one-time examination and prone to the inherent limitations of the claimant's subjective reports of past work experiences." Id. Additionally, the examining psychologist's findings "did not support that the claimant was not stable, as the claimant was alert and oriented, drove herself to the hearing, and executed a three-step command." Id.

The ALJ also extensively discussed his evaluation of the "Paragraph B" criteria regarding mental limitations. He found Plaintiff has a mild limitation "in understanding, remembering, or applying information" and cited specific medical evidence to support this finding. Id. at p. 36. The ALJ likewise found a mild limitation with respect to Plaintiff's ability to "interact with others." Id. The ALJ also explicitly discussed Plaintiff's ability to concentrate, persist, and maintain pace, finding Plaintiff had a moderate limitation based on opinions by psychological consultants. Id.

The ALJ discussed Plaintiff's mental limitations and sufficiently explained why the record supported only a limitation of "simple, routine tasks." Accordingly, the ALJ did not fail to account for Plaintiff's limitations regarding concentration, persistence, or pace, and Plaintiff's assignment of error as to this point is overruled.

### B. RFC and Substantial Evidence

Plaintiff also contends the ALJ's RFC determination is not supported by substantial evidence because he does not properly build a "logical bridge" between the objective medical evidence and the RFC conclusion. (Doc. No. 14, p. 16). Specifically, Plaintiff argues the ALJ committed harmful error because the ALJ did not properly consider Dr. Trivedi's—Plaintiff's treating gastroenterologist—evaluation. Id. In response, Defendant contends that any failure of the ALJ's part is harmless error as the ALJ's RFC finding is more limiting than Dr. Trivedi's opinion. (Doc. No. 20, p. 8).

The Social Security regulations make clear that the Commissioner "will evaluate every medical opinion [he] receive[s]." 20 C.F.R. § 404.1527(c). Courts have consistently held it to be error when the ALJ fails to evaluate an opinion in the record. E.g., Jolley v. Colvin, No. 1:14-CV-00230-GCM, 2016 WL 633412, at *4 (W.D.N.C. Feb. 17, 2016); Allen v. Colvin, No. 1:13-CV-00177-MOC, 2014 WL 496474, at *3 (W.D.N.C. Feb. 6, 2014) ("Generally, failure by the

9

Commissioner to consider an entire line of evidence falls well below the minimal level of articulation required by the Social Security Act."). This duty is balanced, however, by the practical reality that it is not possible or feasible for an ALJ to "discuss every piece of evidence." Vance v. Colvin, No. 1:13-CV-186-RJC, 2014 WL 838906, at *3 (W.D.N.C. Mar. 4, 2014); see also Allen, 2014 WL 496474, at *3. Accordingly, such error is harmless where the evidence would not have caused the ALJ to reach a different outcome. See Brown v. Colvin, No. 1:13-CV-96-GCM, 2014 WL 4666978, at *7 (W.D.N.C. Sept. 18, 2014) (noting it was error for the ALJ to fail to mention medical opinions, but holding the error to be harmless because the opinions "ultimately concluded that Plaintiff was not disabled"), vacated and remanded on other grounds, Brown v. Colvin, 639 F. App'x 921 (4th Cir. 2016) (per curiam); Jones v. Colvin, No. 1:13-CV-212-RLV-DCK, 2014 WL 4265926, at *8 (W.D.N.C. June 6, 2014) (magistrate judge memorandum and recommendation) (addressing a medical source's records, even if not citing to the source's "opinion," is sufficient), adopted by Jones v. Colvin, No. 1:13CV212-RLV, 2014 WL 4266306 (W.D.N.C. Aug. 27, 2014); Vance, 2014 WL 838906, at *3 (upholding the ALJ's review of the plaintiff's doctor's visit without explicitly discussing the doctor's statements).

Here, the ALJ discusses Dr. Trivedi's evaluation, but does not address every portion of the evaluation. As an initial matter, the ALJ assigned only "some weight" to Dr. Trivedi's opinion. (Doc. No. 12, p. 42). The ALJ explained:

> Based on the claimant's cirrhosis of the liver and hepatitis C, Dr. Trivedi opined that the claimant could perform a job seated, standing, or walking for more than six hours. The claimant could frequently lift over fifty pounds and would be absent from work less than once a month. Because Dr. Trivedi's opinion does not consider the claimant's talonavicular fusion of her left foot or lumbar spondylosis, some weight is given to her opinion.

Id. In his discussion of Dr. Trivedi's opinion, the ALJ does not acknowledge that, in Dr. Trivedi's opinion, Plaintiff would have frequent work interferences due to pain, fatigue and other symptoms

10

associated with Plaintiff's cirrhosis and hepatitis C. (Doc. No. 12, p. 822). The ALJ likewise fails to acknowledge Dr. Trivedi's opinion that Plaintiff would need to use the restroom three to four times per day, for an average of 30 minutes to one hour. Id. at p. 823. However, the ALJ does acknowledge other portions of Dr. Trivedi's opinion, including that Plaintiff would be likely to miss work less than once a month. Id. It is not feasible to require the ALJ to consider every piece of objective evidence, and in this case, the ALJ had other evidence to rely on concerning Plaintiff's ability to stay on task during the workday. Indeed, the ALJ ultimately limited Plaintiff to an RFC of "light work" based on all objective medical evidence despite Dr. Trivedi's opinion that Plaintiff could "frequently" lift or carry over 50 pounds during the workday. Id. at p. 822. Thus, the portions of Dr. Trivedi's opinion that the ALJ failed to discuss would not have caused the ALJ to reach a different outcome. Accordingly, any error committed by the ALJ in failing to discuss every portion of Dr. Trivedi's opinion is harmless error.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED, Defendant's Motion for Summary Judgment (Doc. No. 20) is GRANTED, and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: October 29, 2020

Frank D. Whitney
United States District Judge

11

Case 5:19-cv-00142-FDW   Document 21   Filed 10/29/20   Page 11 of 11